# AGREEMENT
## FOUDATION BUILDING MATERIALS LLC
### SEPTEMBER 1, 2019 - AUGUST 31, 2022

## TABLE OF CONTENTS

ARTICLE I - RECOGNITION .................................................................................................. 2

ARTICLE II - REPRESENTATION .......................................................................................... 3

ARTICLE III - UNION SECURITY - CHECKOFF .................................................................. 3

ARTICLE IV - HOURS OF WORK ........................................................................................... 4

ARTICLE V - WAGES ............................................................................................................... 6

ARTICLE VI - VACATIONS ..................................................................................................... 7

ARTICLE VII - SENIORITY ...................................................................................................... 8

ARTICLE VIII - GRIEVANCE PROCEDURE ......................................................................... 9

ARTICLE IX - SAFETY AND HEALTH ................................................................................ 10

ARTICLE X - UNIFORMS ....................................................................................................... 10

ARTICLE XI - HEALTH AND WELFARE ............................................................................ 10

ARTICLE XII - MISCELLANEOUS PROVISIONS ............................................................... 11

ARTICLE XIII - PICKETING .................................................................................................. 12

ARTICLE XIV - UNAUTHORIZED ACTIVITY .................................................................... 12

ARTICLE XV - SAVINGS CLAUSE ...................................................................................... 13

ARTICLE XVI - MANAGEMENT .......................................................................................... 13

ARTICLE XVII - PENSION ..................................................................................................... 13

ARTICLE XVIII - JOB LABOR STANDARDS AND JOB SECURITY ............................... 13

ARTICLE XIX - AUTHORIZED DEDUCTIONS .................................................................. 14

ARTICLE XX - TERMINATION OF AGREEMENT ............................................................ 15



EXHIBIT B

# AGREEMENT
## FOUNDATION BUILDING MATERIALS LLC

This Agreement is made by and between The Laborers' International Union of North America, Midwest Region, within the State of Illinois, except the Illinois Counties of Boone, McHenry, Lake, Kane, Cook, DuPage, Will, Kendall, Grundy and Winnebago; and the Teamsters Downstate Illinois Construction Industry Negotiating Committee (TDICINC) for their jurisdiction (collectively, the "Unions"), for the purpose of creating work for Illinois Laborers and Teamsters within the State of Illinois, whereby contractors under current contract with the aforementioned Unions' local branches having territorial jurisdiction over the area of the project may become more competitive.

### ARTICLE I — RECOGNITION

Section 1. - Foundation Building Materials, LLC (the "Employer") recognizes the Unions as the exclusive collective bargaining agent of the Laborers and Teamsters, but excluding office, clerical and professional employees, guards, hoisting engineers, and all other employees and supervisors for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment.

Section 2. - The Employer will neither negotiate nor make collective bargaining agreements for any of its employees in the bargaining unit covered hereby unless it be through duly authorized representatives of the Union.

Section 3. - The Employer agrees that it will not sponsor nor promote, financially or otherwise, any labor group or labor organization for the purpose of undermining the Unions; nor will it interfere with, restrain, coerce or discriminate against any of its employees in connection with their membership in the Union.

Section 4. - <u>Scope of Work.</u> This Agreement covers all warehousing, loading, unloading, delivery of materials, and the placements of materials on job site locations. This work shall be performed jointly by Teamsters and Laborers. On prevailing rate projects or large commercial projects, the Employer shall contact the Laborers' Local Union having jurisdiction over the project to work out a schedule for unloading of material in stockpile and/or stockpiles. If the Employer evades in working out a schedule with the Laborers' Local Union, he automatically forfeits his right to the Grievance Procedure and the Union shall have the right to economic recourse. If an agreement cannot be reached, the unloading and stockpiling will be done by on-site Laborers and/or the Employer shall contact the Local Union having jurisdiction over the project for referral of Laborers.

Section 5. - <u>Composite Crew.</u> The Employer may establish a crew or crews known as a "composite crew", which shall consist of the required crafts in such proportions as are respective to the type of work to be performed. In performing its work, the "composite crew" shall be allowed relaxation from strict craft jurisdiction, provided the employees from each craft are assigned to their craft's jurisdiction as far as practicable and possible.

Section 6. - This Agreement shall be binding upon the parties, their successors, administrators, executors and assigns.

2



## ARTICLE II — REPRESENTATION

Section 1. - The Employer recognizes the right of the Unions to designate job stewards and alternates.

The authority of job stewards and alternates so designated by the Unions shall be limited to, and shall not exceed, the following duties and activities.

(A) The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement;

(B) The collection of dues when authorized by appropriate Local Union action;

(C) The transmission of such messages and information which shall originate with and are authorized by the Local Union or its officers, provided such messages and information

(1) Have been reduced to writing, or

(2) If not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Job stewards and alternates have no authority to take strike action or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards or their alternates, and shall not hold the Unions liable for any unauthorized acts. The Employer, in so recognizing such limitations, shall have the authority to impose proper discipline, including discharge for just cause, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

Section 2. - The shop steward shall do work assigned to him the same as any other employees. He shall be allowed to take up grievances during working hours, and he may discuss grievances with his supervisor or the respective Union Representative at the place of employment during working hours without loss of pay, provided that the time thus spent be reasonable in amount.

## ARTICLE III — UNION SECURITY — CHECKOFF

Section 1. - It is understood and agreed by and between the parties hereto that, as a condition of continued employment, all persons who are hereafter employed by the Employer in the unit which is the subject of this Agreement shall become members of the respective Union not later than the thirty-first (31st) calendar day following the beginning of their employment or the execution date of this Agreement, whichever is later; that the continued employment of persons who were in the employ of the Employer prior to the date of this Agreement and who are not now members of the Union shall be conditioned upon those persons becoming members of the Unions not later than the thirty-first (31st) calendar day following the execution date of this Agreement.

The failure of any person to become a member of the Union at such required times shall obligate the Employer, upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain his Union membership in good standing as required herein shall, upon written notice to the Employer by the respective Union to such effect, obligate the Employer to discharge such person.

Except as otherwise provided for in this Agreement, the Employer shall retain the right to hire, promote, discipline or discharge for cause, subject to the provisions of Article III herein, the employees coming within the scope of this Agreement.

Section 2. - <u>Checkoff</u>. The Employer agrees to deduct from the pay of all employees covered by this Agreement, dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions. Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law. The Employer will submit to the Union no later than the 15th of every month, a list of new employees and starting date.

## ARTICLE IV — HOURS OF WORK

Section 1. - Working time for the day shift shall start between 6:00 A.M. and 9:00 A.M. Each employee shall be designated a definite starting time between those hours, and shall report for work at that time on each working day, unless definitely notified the day prior that he has been laid off or that he shall report at some other time. The Employer may cancel or change an employee's assigned starting time without penalty by notifying him of the cancellation or change at least one hour prior to his last designated starting time; however, no later than 7:30 A.M. A starting time so changed by such notice may not be cancelled later or again changed for that particular work day.

Section. 2. - Employees starting to work after 9:00 A.M. shall be paid from 9:00 A.M. However, if an employee scheduled or notified to be present on or before 9:00 A.M. arrives later than 9:00 A.M., he shall be paid only from the actual time he starts work. There shall be no split shifts unless pay is given for all hours between the shifts. Employees who are ordered to work at a time prior to 6:00 A.M. on any regular single time working day shall receive time and one-half (1-1/2) the single time rate of pay applicable to their particular classification for all time worked before 6:00 A.M. Then at 6:00 A.M. the rate of pay will revert to the single time rate and continue until he has worked eight (8) hours or less at the single time rate. All time worked past the eight (8) hours at single time rate in any regular single time working day shall be paid for at time and one-half (1-1/2) the single rate and all work performed on Sunday or after ten (10) hours per day shall be paid for at double (2) the rate as provided in Article V.

All employees shall be paid at the rate of one and one-half (1-1/2) times the regular single time as provided in Article V for overtime worked, including work performed on Saturday.

No employee shall be required to work in excess of ten (10) hours in any work day, unless said employee volunteers to work in excess of ten (10) hours. If no employee volunteers, the Employer may assign work based on reverse seniority and capability (not in excess of twelve (12) hours).

Any hours worked over ten (10) hours per day, the employee shall receive one half (1/2) hour dinner period with pay.

4



Section 3. - The Employer, at its option, may establish a second shift to start between 3:00 P.M. and 5:00 P.M., and a third shift, if established, shall start between 11:00 P.M. and 1:00 A.M.

Employees commencing work on the second shift shall receive twenty cents ($.20) per hour over the wage scale set forth in Article V.

Employees commencing work on the third shift shall receive thirty cents ($.30) per hour over the wage scale set forth in Article V.

All provisions relating to definite starting time work before normal starting time, etc., set forth above concerning the first shift, shall apply similarly to any second or third shifts which may be established.

Section 4. - All employees shall be allowed one-half hour for lunch between the fourth and sixth hours of work. Any employee working through the fourth (4th) and sixth (6th) hour lunch period shall be permitted a lunch break as soon as possible thereafter at the employee's discretion. If not allowed to take lunch between the fourth (4th) and sixth (6th) hours, the employee shall receive one-half (1/2) hour's pay at one and one half (1-1/2) times the regular hourly wage rate. Lunch periods shall not be considered as time worked. The time when lunch periods shall be taken shall be at the discretion of the Employer. Employees working through lunch period at the Employer's request shall be paid at the straight time rate of pay; however, it shall not be mandatory. In addition, employees shall be paid at the overtime rate of pay for all hours worked in excess of eight hours daily. Employees working through their lunch period shall have their time worked added to their regular hours worked so that employees working over eight (8) hours, including their lunch period when worked, shall be paid the overtime rate for all hours worked in excess of eight (8) hours.

Section 5. - The work week shall consist of forty (40) hours, eight (8) hours per day, Monday through Friday, except that for any third shift as described in Section 1 above, the work week shall begin Sunday night and end Thursday night. This shall not be considered as a forty (40) hours guarantee. All hours in excess of eight (8) hours per day and forty (40) hours per work week shall be considered as overtime, and the employee shall be paid time and one-half (1-1/2) his hourly rate for working such overtime periods. All work performed on Saturday shall be paid for at time and one-half (1-1/2). All work performed on Sunday or after ten (10) hours per day, shall be paid for at double (2) the regular hourly rate listed below; and all work performed on holidays listed in Section 8 shall be paid for at three (3) times such hourly rate with the exception of Veterans Day. All work performed on Veteran's Day shall be paid for at the regular hourly rate and the employees shall receive a floating paid day off, which shall be scheduled by employees two (2) weeks in advance of the requested day off with only one employee off on the same day. Seniority shall prevail. Overtime shall not be paid twice for the same hours. (Friday night work on the third shift described in Section 1 above shall be considered as Saturday work, and Saturday night shift work thereon shall be considered as Sunday work.)

Section 6. - Unless an employee has been definitely notified the previous day not to report or is notified of cancellation or change of starting time in accordance with Section 1, the employee shall report each day at his last designated starting time and shall receive two (2) hours pay if the employee is not put to work; however, the Employer may cancel or change an employee's assigned starting time without penalty by notifying him of the cancellation or change at least one (1) hour prior to his last designated starting time. A starting time so changed by such notice may not be cancelled later or again changed for that particular work day. All drivers must furnish the Employer with a telephone number at which they may be reached for the purpose of giving such notice. Any employee commencing work shall receive at least four (4) hours pay for that day.



Section 7. - State or Federal election days or days in which Federal, City, State or County officials are to be nominated or elected, the employees shall be given time off with pay for hours of work missed, so that they may have a period of three (3) continuous hours in which to vote, between the times of opening and closing the polls, provided such employees are registered and eligible voters, and provided further that the employees request time off prior to the election day and that the Employer may specify the hours during which such employee may absent himself.

Section 8. - All employees who have completed their probationary period set forth in Article VII, Section 2, shall receive eight (8) hours pay at their straight-time hourly rate when no work is performed on the following holidays, provided such employee has performed work in the calendar week in which the holiday fall:

| | | |
|---|---|---|
| New Year's Day | Labor Day | Friday after Thanksgiving Day |
| Memorial Day | Veterans' Day | Christmas Day |
| Fourth of July | Thanksgiving Day | |

Veterans' Day shall be a floating holiday with one employee off at a time, who must notify the Employer two (2) weeks in advance of requested day off. Seniority shall prevail.

Section 9. Personal Day - Each employee, with at least one (1) year of service, shall be entitled to three (3) personal days per contract year. The employee shall be paid eight (8) hours' pay at the regular hourly rate of pay for each personal day; provided the employee notified the Employer twenty-four (24) hours in advance (whenever possible, forty-eight (48) hours), unless necessitated by legitimate emergency. Any unused days will be paid at the end of each contract year.

### ARTICLE V — WAGES

Hourly rates for all employees shall be:

| | |
|---|---|
| Effective retroactive to September 1, 2019 – | $23.85 ($.75 increase)* |
| Effective retroactive to September 1, 2020 – | $24.50 ($.65 increase)* |
| Effective September 1, 2021 – | $25.15 ($.65 increase) |

New hire tiered wages:

| | |
|---|---|
| 1st 90 days | 70% |
| 2nd 90 days | 90% |
| After 180 days | 100% |

At the Employer's discretion, new hires may be paid at an accelerated rate. Local Unions will be notified of any changes.

Extra Laborers hired from Local Unions shall receive their pay within four (4) days.

* The retroactive wage payments shall be made to employees actively employed on the date of ratification by the Unions.

6



DocuSign Envelope ID: 3387545E-B3C3-4B30-85C5-9919E90869EA

## ARTICLE VI — VACATIONS

Section 1. - It shall be the policy of the Employer to give vacations with pay during the period of January 1 to December 31 of any year.

Employees must notify and post their vacation bid by April 1 of any year. After once making such selection, employees shall not be allowed to change such bid unless mutually agreed to by the Employer. The Employer shall schedule vacations with preference to employees in accordance with their seniority, provided that no more than one employee at a plant may take his vacation at the same time. If an employee fails to submit a vacation bid by April 1, the Employer shall have the right to assign his vacation period. In the case of an employee who is entitled to a fourth week of vacation, the Employer shall have the right to assign such week at a time which will not interfere with the Employer's operation.

Any employee having earned vacation time coming shall receive and take time off from work for such vacation time to which the employee is entitled. Any unused vacation will be paid on the pay period following the anniversary date.

Section 2. -

    (A)    An employee having one (1) year continuous service with his Employer, but less than three (3) years shall be entitled to vacation benefits as follows, according to the number of hours worked in the year immediately preceding his anniversary date on which eligibility is determined:

| | |
|---|---|
| 700 to 899 hours | 3 days' vacation with 24 hours' pay |
| 900 to 1,100 hours | 4 days' vacation with 32 hours' pay |
| 1,101 or more hours | 5 days' vacation with 40 hours' pay |

    (B)    An employee of three (3) or more years continuous service with the Employer shall be entitled to a second week of vacation, that is, he shall receive twice the number of days' vacation with pay according to the number of hours he has worked, as set forth in the schedule of vacations of men of less than three (3) years' service.

    (C)    An employee of seven (7) or more years' continuous service with the Employer shall be entitled to a third week of vacation, that is, he shall receive three (3) times the number of days' vacation with pay according to the number of hours he has worked, as set forth in the schedule of vacations set forth above under (A).

    (D)    An employee of fifteen (15) or more years' continuous service with the Employer shall be entitled to a fourth week of vacation, that is, he shall receive four (4) times the number of hours he has worked, as set forth in the schedule of vacations set forth above under (A).

    (E)    Vacation pay shall be at the average straight-time hourly rate for the hours upon which vacation eligibility is determined.

Section 3. - It is also agreed that whenever a holiday falls within an employee's vacation period, such employee shall be granted an additional day of vacation.

Section 4. - Employees having one or more years of service whose employment is terminated for any reason shall be given, at the time of such separation, vacation pay which he has earned since their last



anniversary date of employment, according to the schedule of benefits set out in Section 2 of this Article.

## ARTICLE VII — SENIORITY

Section 1. - Seasonal layoffs and re-employment shall be upon the basis of length of service with the Employer. Seniority shall prevail so that the last man employed shall be the first man laid off in reducing the working forces of the Employer. Insofar as the Employer covered under this Agreement has one (1) or more plants or yards employing men covered by this Agreement, there shall be separate seniority in each plant or yard.

(A) The senior man in each yard shall be put to work first each working day. Loads to be hauled at the end of each working day shall be taken by the senior employee in the yard at the time the load is to be put in the truck, provided that said senior employee's assigned equipment shall be suitable for the contemplated load, and provided further, that the Employer shall not be caused to sustain loss due to perishable merchandise being previously loaded in another driver's assigned equipment. This or any provision in this Agreement shall not be construed so as to permit any employee to pick any given piece of equipment over any other piece of equipment.

(B) The senior man shall have first right to work overtime and the right to work on premium pay day (Saturdays, Sundays and Holidays).

(C) The senior man shall have first right to select vacation periods.

(D) Foreign domicile work assignments shall be offered by seniority, qualifications, and equipment needed on a by request basis. In the event the senior employees choose not to take the assignment, it shall be assigned to the most junior employee.

Section 2. - New employees shall have a probationary period of sixty (60) calendar days during which time the employee is subject to discharge without recourse either by the Union or as an individual. The probationary period may be extended for an additional thirty (30) days with the mutual consent of the effected employee, the Union and the Employer. New Employees shall also have a CDL probationary period of one hundred eighty (180) calendar days from their hire date. if the new employee has not obtained a CDL license (license class A or B, to be determined by the Employer and designated at the employee's start date) within the CDL probationary period, the employee is subject to discharge. After the completion of the probationary period, seniority shall accrue from the date of employment. In the event an Employee allows their CDL license to expire, the employee has one hundred twenty (120) calendar days from the date their license expired to obtain the CDL license in the class they had before expiration or be subject to discharge.

Section 3. - An employee shall be continued on the Employer's seniority list for a period of twelve (12) months from the date of his layoff; provided, however, that in cases of sickness certified by physician's report, an employee shall be continued for a period not to exceed twenty-four (24) months. Any employee previously laid off shall forfeit his position on the seniority list if he shall fail to return to work after forty-eight (48) hours from the time of his recall by the Employer to the last known address by registered mail, including maximum two weeks' notice to the employee's present Employer.

Section 4. - Regular employees who leave the service of the Employer to enter that of the U.S. Armed Forces shall, upon their return within ninety (90) days from the release from such service, be granted all seniority rights as if continuously employed by the Employer.

Under no circumstances will this clause be construed as to require the Employer to increase the

8



number of its employees beyond those actually needed.

Section 5. - No employee of the Employer, who is not a member of the bargaining unit, can be transferred into the bargaining unit and retain his seniority with the Employer as a member of the bargaining unit.

Section 6. - If, when a plant belonging to an Employer continues operation after being sold or reincorporated or re-named by the same or new owner, the employees of such plant shall not lose any seniority for the purpose of fringe benefits, but for such purpose, shall retain the seniority they had with the Employer whose plant has been sold or re-incorporated or re-named.

## ARTICLE VIII --- GRIEVANCE PROCEDURE

During the term of this Agreement, there shall be no work stoppages or slowdown of work on the part of the Unions and no lockout on the part of the Employer for any differences or disputes arising out of the interpretation or application of any of the provisions contained in this Agreement. In the event of any dispute arising out of the application or interpretation of this Agreement, the same shall be settled by means of the Grievance Procedure hereinafter set forth. No grievance shall be recognized unless submitted in writing to the Employer within fifteen (15) calendar days after the event giving rise to the grievance is forwarded or occurred. All grievances not settled in Steps 1 and 2 below shall be submitted in writing or they are not to be recognized.

Grievances shall be settled according to the following procedure:

    Step 1. - The grievance shall be heard by conference between the respective Union Steward and the Employer representative. Said conference to be scheduled within (10) working days of the Employer receiving the grievance.

    Step 2. - In the event the grievance is not settled by conference in Step 1 above within five (5) working days after a meeting is arranged and held with said parties, then the grievance shall be referred to the Union Business Representative, International Representative, and Employer Representative.

    Step 3. - In the event the grievance is not settled within five (5) working days after a meeting is arranged and held as provided in Step 2 above, then either the Union or the Employer may submit the grievance to impartial arbitration, as hereinafter provided.

The party desiring to submit the grievance to arbitration shall notify the other party involved of the request for arbitration, in writing, within ten (10) working days after the meeting is held between the Union Business Representative and the Employer Representative.

After delivery of the written request for arbitration, the Union and the Employer involved shall attempt to agree upon the arbitrator to hear the grievance. If no agreement is reached on a mutually acceptable arbitrator within five (5) working days after delivery of the written request for arbitration, either the Union or the Employer involved may request the Federal Mediation and Conciliation Service to provide arbitrators.

The arbitrator shall have no authority to change, amend, add to, or detract from any of the provisions of this Agreement.

The decision of the arbitrator shall be rendered within thirty (30) days after the hearing and shall



DocuSign Envelope ID: 3387545E-B3C3-4B30-85C5-9919E90869EA

be binding on both parties.

The above time durations may be waived by mutual agreement of both parties. It shall not be a violation of this Agreement nor grounds for discipline or discharge if any employee refuses to cross or work behind any lawful picket line.

## ARTICLE IX — SAFETY AND HEALTH

The Employer shall continue to make reasonable provisions for the safety and health of its employees at the plant during the hours of employment.

## ARTICLE X — UNIFORMS

The Employer agrees that if an employee is required to wear any kind of a uniform as a condition of continued employment, such uniform shall be furnished and maintained by the Employer, free of charge, at the standard required by the Employer. No employee shall be required to wear a uniform that does not bear the Union label.

The Employer will supply each employee with one (1) pair each cloth and leather gloves to be exchanged for new pair when normal wear deemed necessary.

Effective after ratification, the Employer will reimburse one-hundred percent (100 %) of the cost of work boots up to a maximum of $200.00 upon receiving receipt of work boot purchase, once per contract year.

## ARTICLE XI — HEALTH AND WELFARE

Section 1. The Employer agrees to obtain benefits for bargaining unit employees through, and to contribute to, the Teamster & Employers Welfare Trust of Illinois (TEWTI). The benefits shall be the TEWTI's Major Medical "Plan 1" Benefit Plan. The Employer shall undertake all measures necessary to ensure uninterrupted coverage under this Plan 1 by TEWTI for all eligible employees for the duration of this Agreement and, for each week an employee is receiving any compensation during the life of this Agreement, the Employer shall contribute the following sums:

Effective retroactive to September 1, 2019 - $338.00 per week

Effective retroactive to September 1, 2020 - $368.00 per week

Effective September 1, 2021 - $394.00 per week

This contribution shall be made on all employees for all weeks in each month in which they receive any compensation, except for employees terminated for just cause in which case the Employer shall only be obligated to make contributions on behalf of such employee through the week of termination. For an Employer to be liable for such payments, the following conditions must be met:

(A)  The employee must have been employed by the Employer for thirty (30) calendar days.



(B)  If an employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of twelve (12) weeks.

(C)  If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions shall not be paid for a period of more than six (6) months based on forty (40) hours per week for this period only.

Section 2. - In the event the Employer is delinquent in payment of these contributions to the Welfare Fund, the matter shall be referred to the appropriate Union and an officer of the Employer or his designated representative.

An attempt shall be made to adjust the matter within two (2) weeks after the Union Representative has advised the Company Representative such delinquency exists.

In the event the two (2) representatives cannot correct the delinquency to their mutual satisfaction within the stated two (2) weeks period, the Union shall be free to take such action as it deems necessary until such delinquency payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to his employees for losses resulting therefrom.

## ARTICLE XII — MISCELLANEOUS PROVISIONS

Section 1. - The Union shall have the right to post Union notices or notices of social gatherings on a bulletin board furnished by the Employer.

Section 2. - Authorized agents of the Union shall have access to the employees' working area of the Employer's premises during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, and ascertaining that the Agreement is being adhered to, after having first advised the Employer of their presence.

Section 3. - The Employer agrees that it will not discriminate against an employee or applicant for employment for or on account of his affiliation or activities with the Union, activities protected by Section 7 of the National Labor Relations Act, or because of race, creed, color, national origin, sex, sexual orientation, or age.

Section 4. — When the Employer needs additional employees, he shall give the Local Union equal opportunity with all other sources to provide suitable applicants, but the Employer shall not be required to hire those referred by the Local Union.

Section 5. - The Employer shall not direct, permit, or require employees who do not fall within the scope of the bargaining unit covered by this Agreement, or persons other than employees, to perform any of the work or engage in any of the job duties which are customarily performed or done by the employees in said bargaining unit. Nor shall the Employer, during the term of this Agreement, engage any independent contractor, subcontractor or outside personnel, firm or corporation to do or perform any of such work where he has suitable equipment available to perform such work.

Section 6. - The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. In the event the Employer allegedly violates this Section, the matter shall be referred to the appropriate Union and an officer of the

11



Employer, or his designated representative.

An attempt shall be made to adjust the matter within two (2) weeks after the Union representative has advised the Employer representative of the alleged violation.

In the event the two (2) representatives cannot settle the problem to their mutual satisfaction within the stated two (2) week period, the Union shall be permitted all legal and economic recourse against the Employer involved notwithstanding any provisions in this Agreement to the contrary.

Section 7. - The Employer shall keep a permanent daily payroll record of all employees and of hours worked by employees employed on a time basis showing starting and quitting time and the rates of pay for such time. An Employer, at the request of the Union, shall furnish such information to the Union.

Section 8. — When an employee is arrested during the scope of his employment for (1) at the direction of the Employer, operating a truck that is overloaded, or (2) casting mud on the highway, the Employer shall supply him with bond, if necessary, pay the fine resulting therefrom, and reimburse such driver, if detained, for straight-time hours lost during detention on the day of such occurrence.

Section 9. - All trucks and equipment that are in operation and being driven shall be equipped with heaters and defrosters for driver and public safety.

Section 10. - In case of death of mother, mother-in-law, father, father-in-law, brother, brother-in-law, sister, sister-in-law, husband, wife, child, and grandparents (maternal and fraternal only, includes immediate grandparents) the Employer will grant a leave of absence with pay from the day of death until and including the day after the funeral, celebration of life, or cremation, not to exceed three (3) working days.

Section 11. – Effective 1-1-17 the Company shall equip each company owned vehicle utilized by Bargaining unit employees with a Company owned cell phone to be utilized for Company business purposes.

## ARTICLE XIII — PICKETING

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of any Union party to this Agreement, and including primary picket lines at the Employer's places of business.

## ARTICLE XIV — UNAUTHORIZED ACTIVITY

It is understood and agreed that the Union shall have no financial liability for acts of its members or agents which are unauthorized and which the Union cannot control. It is agreed, however, that in the event of any such unauthorized action, the Union shall, upon receiving notice thereof, urge its members to return to work, if there should be a work stoppage, and just as soon as practical, address a letter to the Employer notifying the Employer that the action of the Union members or agents is unauthorized.

The Employer shall retain the right to discipline employees responsible for such unauthorized activities without violation of the terms of this Agreement.

In order that the Employer may be apprised of the officer of the Union empowered to authorize strikes, work stoppages, or actions which will interfere with activities required of employees under the Agreement, it is understood

12



and agreed that only the Teamsters Downstate Illinois Construction Industry Negotiating Committee or The Laborers' International Union's Regional Office has the power or authority to authorize any such actions or give the order or directions necessary to carry out any such notice. The Union shall notify the Employer, in writing, as to the name of its top administrative officer.

### ARTICLE XV — SAVINGS CLAUSE

If any of the terms and conditions of this Agreement are in violation of any state or federal law or court decision or decree, then, to the extent of any violation, this Agreement shall be null and void and subject to re-negotiation. If any portion of this Agreement is declared illegal, it shall not, in any way, affect the remaining provisions of this Agreement.

### ARTICLE XVI — MANAGEMENT

The management of the Employer's business and the direction of the working forces, including the right to hire, suspend, discipline or discharge for just cause, or to transfer, to promote or demote, and the right to relieve employees from duty for lack of work or for other legitimate reasons, and to assign equipment, is vested exclusively in the Employer, subject to the provisions of this Agreement.

It is understood that the Employer shall continue to enforce its substance abuse program including pre-hire testing of all applicants.

Any dispute arising under this clause shall be subject to arbitration as contained in Article VIII.

### ARTICLE XVII — PENSION

The current 401(k) Plan now in effect or a plan equal to or better shall continue through the term of this Agreement. Change and administration of such a plan shall be the sole responsibility of the Employer and the Union shall not be held liable as to compliance with laws or overall legality of such plans or their effect. Beginning September 1, 2013, the Employer will contribute an amount equal to one percent (1%) of each employee's annual gross earnings to the Plan each year. Beginning September 1, 2014, the Employer will contribute an amount equal to three percent (3%) of each employee's annual gross earnings to the Plan each year. Effective September 1, 2021, the Employer will contribute an amount equal to four percent (4%) of each employee's annual gross earnings to the Plan each year. Employees will be able to voluntarily contribute up to 15% of their annual gross earnings each year. The Employer will also make a matching contribution for all contributions made by the employee pursuant to the provisions of the Plan Document. The Employer will not change its matching contribution during the life of this Agreement, which is $.50 of every $1.00 up to 6% of gross wages. Effective 1-1-17 the Company match for the life of this Agreement shall be $.50 of every $1.00 to a maximum of 8% of the employee's gross wages.

### ARTICLE XVIII — JOB LABOR STANDARDS AND JOB SECURITY

Section 1. - The terms and provisions of this Article have been negotiated and agreed upon by and between the parties for the purpose of providing covered employees with the maximum job security and steady employment warranted by the Employer's business, and for the additional purpose of providing against the diminution of these Union's established wage scales and working conditions which may result if person outside of the bargaining unit here involved or outside of other similar bargaining units are free to do like work for less.

Section 2. - The Employer shall not direct, require or knowingly permit any of its employees who are not included within the bargaining unit covered by this Agreement to do or perform any of the work, which is done or performed by those within this bargaining unit. Nor shall owners, Employers, nor those having a proprietary interest in the

13



business be directed, required or knowingly permitted to do or perform any of said work.

Section 3. - The Employer agrees to refrain from knowingly employing the services of any person, or persons, who does not observe the wages, hours and conditions of employment established by this Collective Bargaining Agreement on work covered by this Agreement.

Section 4. - All changes in the Employer policy or work rules will be discussed with both the Laborers' Midwest Regional Office and Teamsters Joint Council 25 before implementation.

Any write-up, reprimand or discipline shall be removed from the employee's file one (1) year from the date of issuance.

Section 5. - No employee discipline shall be posted for public viewing.

Section 6. - The Employer shall equip each truck with a five (5) gallon water cooler and cup dispenser. Water and ice will be provided as needed.

## ARTICLE XIX — AUTHORIZED DEDUCTIONS

The Employer will recognize an authorization for deduction once a year from wages, if in compliance with state law, to be transmitted to the Local Union or to such other organizations as the Union may request. No authorization shall be recognized if in violation of state or federal law. No deduction shall be made which is prohibited by applicable law.

<u>Laborers' Political League (LPL) Checkoff</u> The Employer agrees to a political checkoff of five cents ($.05) per hour from employees covered by this Agreement, provided that the employee signs a voluntary authorization for such political deductions. Such forms shall be in accord with applicable laws. Such monies deducted will be remitted on a monthly basis by separate check, payable to Midwest Region Laborers' Political League, 1 North Old State Capitol Plaza, Suite 525, Springfield, Illinois 62701.

<u>Illinois Laborers'-Employers Cooperation & Education Trust (IL LECET).</u> The Employer agrees to pay to the IL Laborers'-Cooperation & Education Trust (IL LECET) contributions at the rate of eight cents ($0.08) for each hour or portion of an hour worked for which each Laborer covered by this Agreement is entitled to receive pay.

The Employer also agrees to make payments to and be bound by the Agreement and Declaration of Trust establishing the Illinois Laborers'-Employers Cooperation and Education Trust Fund (IL LECET), including any amendments duly adopted by the Trustees thereof.

Contributions shall be made by the Employer, no later than the fifteenth (15th) day of the month following the month in which hours of covered employment were worked.

Contributions and remittance report forms should be mailed to the Laborers' International Union of North America, Midwest Regional Office, 1 North Old State Capitol Plaza, Suite 525, Springfield, Illinois 62701.

14



## ARTICLE XX — TERMINATION OF AGREEMENT

This Agreement shall be in full force and effect for the period from September 1, 2019, through August 31, 2022. Sixty (60) days written notice prior to said expiration date shall be given by either party to the other of any desire to cancel or amend this Agreement. In the absence of such notice, this Agreement shall be automatically renewed for the period of an additional year.

IN WITNESS WHEREOF, this Agreement has been executed effective on the date above noted.

FOUNDATION BUILDING MATERIALS LLC DBA ~~PBM GYPSUM SUPPLY OF ILLINOIS, LLC.~~

Ruben Mendoza
Name

President & CEO
Title

Signature —DocuSigned by: A19251523E9043F...

4/21/2021
Date

TEAMSTERS DOWNSTATE ILLINOIS CONSTRUCTION INDUSTRY NEGOTIATING COMMITTEE (TDICINC)

Name

Title

Signature

3-11-2021
Date

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

John F. Penn
Name

Vice President and Regional Manager
Title

Signature

3/24/21
Date

15